2020 IL App (1st) 173091-U

FOURTH DIVISION
March 31, 2020

No. 1-17-3091

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

|  |  |  |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) |  |
| v. | ) ) | No. 10 CR 6164 |
| FLETCHER DOGAN, | ) ) ) |  |
| Defendant-Appellant. | ) ) ) ) ) | Honorable Joan M. O'Brien, Judge Presiding. |

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Gordon and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Affirming the summary dismissal of defendant's postconviction petition where the circuit court complied with section 122-2.1(a)(2) of the Post-Conviction Hearing Act (725 ILCS 5/122-2.1(a)(2) (West 2016)).

¶ 2   Defendant Fletcher Dogan appeals from the order of the circuit court of Cook County

summarily dismissing his *pro se* postconviction at the first stage of proceedings pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). Defendant was convicted by a jury of aggravated battery with a firearm and sentenced to 25 years' imprisonment. On direct appeal, this court affirmed defendant's conviction and sentence for aggravated battery finding that the evidence was sufficient to find him guilty beyond a reasonable doubt, the prosecutor's closing argument was not improper, and his sentence was not excessive. *People v. Dogan*, 2016 IL App (1st) 140300-U, ¶ 36 (unpublished pursuant to Illinois Supreme Court Rule 23 (eff. July 1, 2011)). Defendant then filed a *pro se* postconviction petition with the circuit court, which was dismissed on the record in open court as being frivolous and patently without merit. Subsequently, and over 90 days after the postconviction petition was filed, the circuit court issued a written order memorializing the dismissal of defendant's petition. Defendant now appeals the summary dismissal of his postconviction petition raising the sole argument that the circuit court failed to comply with section 122-2.1(a)(2) of the Act (725 ILCS 5/122-2.1(a)(2) (West 2016)) by failing to issue a written order of its findings within 90 days. Defendant requests this court remand the matter for second stage proceedings. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 3                                    BACKGROUND

¶ 4     The following recitation of the facts of the trial comes from our decision on direct appeal, *People v. Dogan*, 2016 IL App (1st) 140300-U, ¶¶ 4-21. Around 7:30 p.m. on December 21, 2009, Curtis Pittman drove a van to 90th Street and Union Avenue to visit Art Bryant. As Pittman and Bryant walked from Bryant's home towards the van, a man ran up from behind them and knocked Bryant down. Pittman entered the van and attempted to start it. The man, who wore a black face mask and a skull cap, came to the driver's side of the van and demanded

money. Bryant arose from the ground and ran back to his home. Pittman refused to give the man money. The man tried to pull Pittman out of the van. Pittman kicked the man from off the van and started the van. The man pulled out a handgun and fired three or four shots. One hit Pittman's side.

¶ 5    Pittman drove to his sister's home a few miles away. Once he arrived, he collapsed. A bullet fell out of his jacket. His sister's family called the police and kept the bullet, making sure no one touched it before police arrived. An ambulance took Pittman to a nearby hospital, where he underwent surgery.

¶ 6    Around 8 p.m. that night, police officers arrested defendant on 93rd Street, about a block away from Union. Defendant wore a black skull cap and carried a black face mask at the time of the arrest. A sample of the surface of his hands showed traces of antimony, barium and lead, indicating that he had probably been near a handgun when it discharged, shortly before the evidence technician swabbed the hand. A grand jury indicted defendant for attempted murder, attempted armed robbery, unlawful use of a weapon by a felon (UUWF), and aggravated battery with a firearm.

¶ 7    At the jury trial, Officer Adam Schur of the Chicago Police Department testified that in response to a call about the shooting, he drove to 90th and Union to canvas the area for witnesses. At 92nd and Union, he observed a man out on the street, walking towards a house on the corner. The man went to the door and tried the knob, but when the door did not open, he walked back toward the street. Schur identified defendant in court as the man he viewed near 92nd and Union. Schur testified that he rolled down his vehicle's window and asked defendant whether he had heard any shots fired. Defendant answered, "I just got out here." Defendant walked quickly past the police car. When Schur exited his vehicle, defendant started to run.

Schur said, "Stop. I want to talk to you." Defendant ran faster and Schur followed. Defendant ran through a gangway, and Schur ran through the gangway of the house next door, trying not to lose sight of defendant. Schur encountered a fence between the gangway and the alley, which he climbed over.

¶ 8     Schur testified that as he climbed, he observed defendant throw a handgun behind a garage, about 45 feet from Schur. Defendant then sprinted south to the end of the alley and turned onto 93rd Street. Schur climbed over the fence, dropped into the alley and pursued defendant. He found defendant walking on 93rd Street, about a block from Union, where he took defendant into custody. Schur directed other officers to the garage by the alley where he observed defendant throw the handgun.

¶ 9     Officer Samuel Lagunas testified that he found a black handgun with a brown handle by the garage to which Schur directed him. Lagunas identified in court a handgun as the one he found. Schur identified the same handgun as the one he observed defendant toss. Pittman identified the same handgun as the one he viewed in the hand of the man who shot him. A ballistics expert testified that the same firearm discharged the bullet recovered from Pittman's jacket.

¶ 10     Schur identified a skull cap and face mask in court as the items he recovered from defendant at the time of the arrest. Pittman identified the same mask and skull cap as the ones worn by the man who shot him.

¶ 11     Pittman admitted that he did not see the face of the robber because of the skull cap and mask. He viewed a lineup, but he made no identification, and in court he could not identify defendant as the robber. Pittman also admitted that when he spoke to police, he described the robber as about 5 feet 6 inches tall and about 160 to 180 pounds. According to the presentence

investigation report, defendant stood 5 feet 10 inches and weighed about 215 pounds.

¶ 12      The expert who tested the sample from defendant's hands admitted that secondary transfer of the elements could also account for the findings from her tests.  For example, if someone discharged a handgun then put his hands on a table, and defendant grabbed the same part of the same table shortly thereafter, defendant could pick up significant amounts of antimony, barium and lead.  The expert admitted that on the basis of her tests, she could not conclude with certainty that defendant fired a handgun.

¶ 13      The prosecution also presented evidence that the State conducted a thorough investigation.  A fingerprint specialist found no fingerprints on the handgun.  A swab of the firearm designed to find residual DNA recovered nothing to test.  An investigator reported the steps he took to find Bryant.  He spoke with several persons who knew Bryant, but the investigator could not find Bryant.  The investigator testified that he spoke with the man who owned the building where Bryant had lived in 2009, at the address nearest to the shooting. According to the investigator, the owner "said it was a crack house before he bought it."

¶ 14      After hearing closing arguments and jury instructions, the jury deliberated and ultimately found defendant not guilty of attempted murder, but guilty of attempted armed robbery, UUWF, and aggravated battery with a firearm.  Defense counsel filed a motion for judgment notwithstanding the verdict, but he filed no motion for a new trial, and he raised no issue concerning closing arguments in his posttrial motions. The trial court denied the motion for judgment notwithstanding the verdict.  After a sentencing hearing, the trial court sentenced defendant to 25 years' imprisonment for aggravated battery with a firearm.  The trial court imposed no sentence for UUWF and attempted armed robbery.  The trial court denied defendant's motion for reconsideration of the sentence.

¶ 15    On appeal, defendant argued that the evidence presented at his trial was insufficient to find him guilty, there was prosecutorial misconduct in closing argument that deprived him of a fair trial, and that the trial court imposed an excessive sentence. We affirmed defendant's conviction and sentence finding the circumstantial evidence supported defendant's conviction, the prosecutor's comments fell within the bounds of permissible response to defense counsel's argument, and that defendant's prior criminal history justified the lengthy sentence. *Dogan*, 2016 IL App (1st) 140330-U, ¶ 2.

¶ 16    On July 20, 2017, defendant filed a *pro se* postconviction petition raising numerous allegations of ineffective assistance of trial and appellate counsel primarily concerning trial counsel's decision not to file a motion to suppress evidence and a motion to dismiss the indictment. He also alleged that the trial court submitted too many charges for deliberation to the jury and that there were errors in his sentencing hearing.

¶ 17    On October 18, 2017, the circuit court denied defendant's postconviction petition, stating on the record the following:

> "This is a first-stage post-conviction petition that I have been trying to get the court file, that I got today on the 90th day that I have to review the case. I was able to find my own notes from the trial and I was able to read the Appellate Court opinion.
>
> * * *
>
> The petitioner filed this petition for post-conviction relief on July 20th of 2017 with no supporting affidavits except for a one-sentence affidavit of his own stating that the petition is true, and he attached the Grand Jury transcript and a few pages of the trial transcript.
>
> In the instant petition his constitutional challenges on issues 1, 3 and 4 are

waived. By failing to raise these issues in his direct appeal, the petitioner has procedurally forfeited review of his claims. His first contention is that his trial counsel was ineffective; the third was that I committed error in giving the jury too many charges, and fourth, regarding having the victim's fiance read the victim impact statement at sentencing.

Even if these claims were not procedurally barred, they would still fail on post-conviction review for the following reasons: Number one, the ineffective assistance of trial counsel. In examining petitioner's claim of ineffective assistance of counsel, I follow the two-prong test of Strickland vs. Washington, which is 466 U.S. 668, a 1984 case. Under this standard petitioner must show that counsel's representation fell below an objective standard of reasonableness and that because of this deficiency there is a reasonable probability that counsel's performance was prejudicial to the defense.

Petitioner claims that the ineffective assistance of counsel denied his right to a fair trial, where his trial counsel failed to file a pretrial motion to quash his arrest. Petitioner asserts that there was no probable cause to arrest him. However, in his description of the trial testimony, he leaves out a number of salient facts.

The court relies on its own notes from [the] trial as no transcript has been provided. Officer Schur, S-C-H-U-R, testified at trial that he was dispatched to do a canvass of the area after the shooting; that within a half an hour of the shooting he was at 92nd and Union and he saw the petitioner walk up the steps to a residence at 9201 South Union. He looked in the officer's direction and then turned the handle on the front door but was not able to open the door. The officer put his window down and asked the petitioner if he had heard any shots fired. The petitioner replied, 'I just got out here,' and

he gave the officer an address on the West Side of Chicago. Petitioner then walked quickly past the police car. When the officer opened his door, the petitioner took off in a full sprint. The officer said, 'Stop, I want to talk to you,' but petitioner did not stop; he ran faster with the officer in pursuit. During the chase the petitioner lobbed a handgun behind a garage and kept running. When the petitioner was caught on 93rd Street, the officer recovered the mask the petitioner had worn during the robbery, and he was still wearing the skull cap. The gun was subsequently recovered from near the garage.

Petitioner submits no affidavit alleging a different scenario. Based on the trial testimony, there was probable cause to arrest the petitioner, and any motion to quash the arrest would not likely have succeeded. Therefore, petitioner cannot meet the first prong of Strickland, that his trial counsel's performance fell below an objective standard of reasonableness.

Petitioner further claims ineffective assistance of trial counsel for his attorney's failure to file a motion to dismiss the indictment. Petitioner offers no authority to support this claim, complaining that the detective who testified is not listed in the arrest report, and provides a copy of the arrest report; however, none of the other police reports were provided. Even though he was not called to testify at trial, the State's opening statement referenced this detective in that he went to the hospital where the shooting victim was taken. The testifying detective does not need to have personal knowledge of everything he relates to the Grand Jury. He can rely on police reports and other items to testify. Therefore, any motion to dismiss would likely have been denied, and petitioner again fails to establish his trial counsel's conduct fell below and objective standard of reasonableness. Both petitioner's claims of ineffective assistance of trial counsel are

frivolous and patently without merit.

Next, petitioner claims ineffective assistance of appellate counsel for not raising the issue that the gun should have been suppressed. This is the one issue of petitioner's four that is not waived as it is a claim against his trial counsel.

As recounted earlier there was probable cause to arrest petitioner, and he was seen throwing the weapon. Petitioner has not established that appellate counsel's representation fell below an objective standard of reasonableness because any motion filed would not have been successful as he had abandoned the weapon and had been seen with it before he abandoned it.

Also, petitioner claims ineffective assistance of appellate counsel for not raising the issue of the police conducting a gunshot residue test on his hands. Again petitioner offers no support for this claim as defendants are required to submit to noninvasive testing. Therefore, petitioner has failed to show his appellate counsel's performance fell below an objective standard of care.

Petitioner claims that this court erred in submitting too many charges for the jury to deliberate on. Again petitioner offers no support for this claim. The jury was instructed on four charges. The petitioner is correct that there was some confusion with this because, as was found out during deliberations after the jury had sent out several notes, that even though the court's copy, the State's copy and defense counsel's copy had correct instructions, the copy that went back to the jury was an incorrect copy that combined three charges on one for the verdict forms of guilty and not guilty. The jury was reasonable to be confused on that, and once that was learned, corrected copies were sent back to the jury; they deliberated for a very short time and came back with verdict

forms where he was found not guilty of attempt murder but guilty of the other charges. So defendant raises no issues with that showing any error committed by this court.

The defendant's final complaint – and I also find that the issue regarding the instructions and the too many charges was waived as it was not raised on his direct appeal.

And the final count that I also believe was waived is that petitioner claims he was denied his state and federal constitutional rights to fair sentencing because I allowed Mr. Pittman's victim impact statement to be read by his fiance. Again the petitioner offers no support to back up his claim that this was improper. He raises a Brady issue, but Brady is pretrial discovery saying he was not tendered a copy of this, and also claims he was prejudiced because then the victim wasn't cross-examined. However, this victim testified at trial. The defendant did not testify at trial. And the statute allows that the victim or his representative and the victim's spouse, guardian, grandparent or other immediate family or household member may, upon his or her request, be permitted to address the court regarding the impact the defendant's conduct had upon them and the victim. And that is at 725 ILCS 120/6(a).

So even if that issue was not considered to be waived, I find that it is without merit and I find that all of the issues the petitioner has raised are frivolous and patently without merit. Accordingly, the petition for post-conviction relief is hereby dismissed. Petitioner's request for leave to proceed in forma pauperis and for appointment of counsel is likewise denied.

I direct the clerk to send a copy of the half sheet to the defendant/petitioner and then a written order will follow."

¶ 18    The dismissal of defendant's postconviction petition was recorded on the half-sheet as well as the criminal disposition sheet on October 18, 2017. Defendant filed a notice of appeal on November 15, 2017. The circuit court filed its written order dismissing the postconviction petition as frivolous and patently without merit on November 27, 2017. The written order was nearly identical to the circuit court's reasons set forth in open court.

¶ 19                                    ANALYSIS

¶ 20    On appeal, defendant raises only one contention: that his petition must be advanced to the second stage of postconviction proceedings where the circuit court failed to enter a written order within 90 days of the filing of his petition under section 122-2.1(a)(2) of the Act (725 ILCS 5/122-2.1(a)(2) (West 2016)). Defendant does not argue the merits of his petition. In response, the State maintains that the language of section 122-2.1(a)(2) of the Act, which states that the court must dismiss a petition with written findings, is directory and not mandatory. For the reasons that follow, we conclude that the circuit court's summary dismissal of the petition was properly entered of record within 90 days of the petition's filing.

¶ 21    A postconviction proceeding consists of three stages. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). The initial stage of proceedings is governed by section 122-2.1(a) of the Act which states: "Within 90 days after the filing and docketing of each petition, the court shall examine such petition and enter an order thereon pursuant to this Section." 725 ILCS 5/122-2.1(a) (West 2016). "If the court determines that the petition is either frivolous or patently without merit, the court must dismiss the petition in a written order" and must specify "the findings of fact and conclusions of law it made in reaching its decision." *Id*. Such order of dismissal is a final judgment and shall be served upon the petitioner by certified mail within 10 days of its entry. *Id*. A petition which is not dismissed within 90 days must advance to second-stage proceedings. 725

ILCS 5/122-2.1(b) (West 2016).

¶ 22    We review the dismissal of a postconviction petition under a *de novo* standard. *Edwards*, 197 Ill. 2d at 247. Further, the issue before this court is a matter of statutory construction of section 122-2.1(a)(2), which we review *de novo*. *People v. Conick*, 232 Ill. 2d 132, 138 (2008). The guiding rule of statutory construction is to determine and give effect to the legislature's intent. *People v. Alcozer*, 241 Ill. 2d 248, 254 (2011).

¶ 23    On October 18, 2017, the circuit court, in open court before a court reporter, reviewed the petition, found it frivolous and without merit, and dismissed it. The dismissal was made of record and memorialized by the October 18, 2017, entry on the half-sheet and the criminal disposition sheet. Defendant does not claim he never received the disposition sheet and, in fact, he filed his notice of appeal within 30 days of the October 18, 2017, order. The question before us is thus whether the dismissal was entered by the circuit court within the 90 days as provided in the Act.

¶ 24    Defendant maintains that in order to properly dismiss a postconviction petition at the first stage the circuit court must enter a written order of dismissal within 90 days of the petition being filed and docketed. According to defendant, he filed a *pro se* petition on July 20, 2017. While the circuit court made an oral pronouncement dismissing his petition on October 18, 2017-- within the 90 days--the court's written order was not entered until 40 days later, on November 27, 2017. Defendant concludes that because the circuit court's written order dismissing his petition was not timely entered of record, this court must remand the matter for second-stage proceedings under the Act.

¶ 25    In support of his position, defendant relies on our supreme court's decision in *People v. Perez*, 2014 IL 115927. Defendant maintains that *Perez* interpreted section 122-2.1(a) of the Act

to require that a written order of findings of fact and conclusions of law must be entered within 90 days of the filing and docketing of a postconviction petition.

¶ 26    We do not find that *Perez* supports his position; rather, *Perez* supports a conclusion that the circuit court's oral ruling constituted a valid summary dismissal.  The issue in *Perez* was whether a first-stage dismissal was timely where the circuit court signed a written dismissal order on the ninetieth day, but the clerk did not enter the dismissal order until the following day.  *Id.* ¶ 1.  Specifically, *Perez* addressed the issue of when the written dismissal order was "entered" and, thus, made final for purposes of the 90-day requirement of section 122-2.1(a).  *Id.* ¶ 10. After examining the language of section 122-2.1(a) and analyzing at length Illinois Supreme Court Rule 272 (Ill. S. Ct. R. 272 (eff. Nov. 1, 1990)), the court found that the dismissal order was not entered at the time the circuit court signed it, but when it was entered on the record. *Perez*, 2014 IL 115927, ¶¶ 11-25.

¶ 27    In so holding, our supreme court addressed the defendant's hypothetical argument that the circuit court would have met the 90-day requirement if it had announced in court that it was dismissing the petition, relying on the public expression doctrine.  *Id.* ¶ 23.  Our supreme court noted that the defendant's reliance on the public expression doctrine was misguided, and that a simple announcement of a dismissal by the court would not have met the requirements of section 122-2.1(a) that a dismissal be "entered."  *Id.*  Our supreme court did not consider whether the lack of an order of dismissal with written findings within 90 days required the advancement of the petition to second-stage proceedings, as is the issue here.  Indeed, in deciding *Perez*, our supreme court did not address or consider its earlier holding in *Porter*.  Consequently, we conclude that defendant's reliance on *Perez* is not persuasive.

¶ 28    We acknowledge that the *Perez* opinion indicated that the mere announcement of a

dismissal in open court within 90 days may not be sufficient under section 122-2.1(a). *Id.* ¶ 23. This case, however, does not concern a simple oral pronouncement of a dismissal; the circuit court stated its findings when it dismissed the petition on the record in open court and the dismissal was entered and memorialized by the entry on the half-sheet and by the disposition sheet. See *People v. Cooper*, 2015 IL App (1st) 132971, ¶ 14.

¶ 29    Indeed, we find that the holding in *Cooper* guides our analysis. In *Cooper*, the defendant's *pro se* postconviction petition was summarily dismissed by the circuit court. The dismissal was memorialized in a disposition sheet sent to defendant and on the circuit court's half-sheet. *Id.* Citing *Perez*, we found that "a written order of summary dismissal is not required." *Id.* (citing *Perez*, 2014 IL 115927, ¶¶ 15, 29). Instead, "a court summarily dismisses a postconviction petition when its decision is entered of record." *Id.* (citing *Perez*, 2014 IL 115927, ¶¶ 15, 29). We found that the dismissal was "entered" on the date documented by the half sheet entry of dismissal and the disposition sheet. *Id.*

¶ 30    As in *Cooper*, the circuit court's dismissal of the petition in this case was entered on October 18, 2017, as evidenced by the disposition sheet which was sent to defendant. Thus, the dismissal was entered within 90 days of the filing and docketing of the petition. Moreover, as previously stated by our supreme court, section 122-2.1(a) " 'contains no expression that the proceedings should be held void if the circuit court fails to specify its findings, nor would such a failure injure a defendant's rights since the dismissal of a post-conviction petition is subject to review.' " *People v. Porter*, 122 Ill. 2d 64, 82 (1988) (quoting *People v. Wilson*, 146 Ill. App. 3d 567, 579 (1986)). Consequently, the "failure to specify the findings of fact and conclusions of law in the written order does not require reversal of the dismissal order." *Id.* Here, the circuit court, in support of the dismissal, made detailed oral findings on the record which were later

transcribed. Nothing precluded defendant from obtaining appellate review where the circuit court stated at length its findings and conclusions of law on October 18, 2017. See *id.* at 81-82 (advising the trial court state its reasons for dismissal because the purpose for requiring a written order with findings is to facilitate appellate review of summary dismissals); *Cooper*, 2015 IL App (1st) 132971, ¶ 10 ("if a court determines that a postconviction petition is frivolous and patently without merit, the petitioner is entitled to know the reasons for that determination so that they can be meaningfully addressed on appeal").

¶ 31    Defendant asserts, however, that this case is unique because the circuit court "explicitly stated that a written order of judgment would be submitted at a later time" and a "notation to that effect was also made in the docket entry." Thus, under these circumstances, defendant maintains that pursuant to Rule 272, the judgment became final only when it was signed and filed— November 27, 2017—and therefore the circuit court's summary dismissal was invalid. We do not find this argument persuasive.

¶ 32    Rule 272 provides in pertinent part:

> "If at the time of announcing final judgment the judge requires the submission of a form of written judgment to be signed by the judge or if a circuit court rule requires the prevailing party to submit a draft order, the clerk shall make a notation to that effect and the judgment becomes final only when the signed judgment is filed. If no such signed written judgment is to be filed, the judge or clerk shall forthwith make a notation of judgment and enter the judgment of record promptly, and the judgment is entered at the time it is entered of record." Ill. S. Ct. R. 272 (eff. Nov. 1, 1990).

¶ 33    In the case at bar, the transcript of proceedings indicates that after making its extensive oral pronouncement dismissing defendant's petition as frivolous and patently without merit the

circuit court stated, "I direct the clerk to send a copy of the half sheet to the defendant/petitioner and then a written order will follow." An identical statement was made in the docket sheet: "Clerk to send copy of half sheet to petitioner. Written order to follow." The circuit court's statement that "a written order will follow" is not indicative of the court "requiring" the "submission of a form of written judgment" in contemplation of Rule 272. Indeed, the court's direction to the clerk to "send a copy of the half sheet to defendant" indicates the opposite intent as such a direction starts the 10-day clock for the clerk of the court to send defendant a copy of the order of dismissal pursuant to the Act. See 725 ILCS 5/122-2.1(a)(2) (West 2016) ("Such order of dismissal is a final judgment and shall be served upon the petitioner by certified mail within 10 days of its entry.").

¶ 34    In reaching this conclusion, we observe that the cases on which defendant relies are inapposite. *Swisher v. Duffy*, 117 Ill. 2d 376 (1987), *Boyd v. Sanitary District of Decatur*, 215 Ill. App. 3d 141 (1991), and *Federal Kemper Life Assurance Co. v. Eichwedel*, 266 Ill. App. 3d 88 (1994), all involved interpretations of Rule 272 within the context of the Code of Civil Procedure (735 ILCS 5/1-101 *et seq.* (West 2016)). The Act, however, is a different statutory creation. As previously discussed, while Rule 272 has a role in postconviction proceeding jurisprudence, its role is limited to what is allowed by the Act and our supreme court's interpretation of the Act. In *Porter*, our supreme court held that the written order requirement was discretionary not mandatory. *Porter*, 122 Ill. 2d at 81-82. The supreme court, in its opinion in *Perez*, did not address or consider its earlier holding in *Porter*. Its holding, instead, was limited to the question of whether a first-stage dismissal was timely where the circuit court signed a written dismissal order on the ninetieth day, but the clerk did not enter the dismissal order until the following day. *Perez*, 2014 IL 115927, ¶ 1. *Perez* did not involve the specific

factual circumstances we face in this case; namely, a lengthy, reasoned oral determination by the circuit court transcribed on the record in open court. This court in *Cooper* squarely addressed the issue at bar, determining that where the dismissal is memorialized in a disposition sheet sent to defendant and on the circuit court's half-sheet a written order of summary dismissal is not required. *Cooper*, 2015 IL App (1st) 132971, ¶ 14 (citing *Perez*, 2014 IL 115927, ¶¶ 15, 29). Accordingly, we decline to find the cases cited by defendant to be persuasive in the context of the Act.

¶ 35    In sum, while a written order with findings is advisable, the circuit court's oral dismissal was entered of record on October 18, 2017, and the circuit court made detailed findings on the record to facilitate appellate review of the dismissal. Moreover, the dismissal was entered on the half-sheet/disposition sheet. See *id.* As such, the reversal of the circuit court's dismissal is not required by section 122-2.1(a)(2) of the Act (725 ILCS 5/122-2.1(a)(2) (West 2016)).

¶ 36    As defendant fails to raise any other issues with the propriety of the circuit court's order, we affirm the judgment of the circuit court of Cook County dismissing the postconviction petition.

¶ 37                            CONCLUSION

¶ 38    For the reasons stated above, we affirm the judgment of the circuit court of Cook County.

¶ 39    Affirmed.